STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey A. WARBELTON,
Defendant-Appellant-Petitioner.

Supreme Court

No. 2007AP105–CR. *Oral argument November 5, 2008.*
*—Decided January 21, 2009.*

2009 WI 6

(Also reported in 759 N.W.2d 557.)

253

For the defendant-appellant-petitioner there were briefs by *Paul G. LaZotte,* assistant state public defender, Madison, and oral argument by *Paul G. LaZotte.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Jeffrey A. Warbelton, seeks review of a published court of appeals decision affirming his conviction for stalking.[1] Under Wis. Stat. § 940.32(2m)(a) (2001–02),[2] whoever commits the crime of stalking is guilty of a Class H felony if the actor has a previous conviction for a violent crime. Warbelton stipulated that he had been convicted of a prior violent crime. Over his objection, the stipulation was admitted into evidence and the issue was submitted to the jury for its determination.

¶ 2. Warbelton asserts that because a prior conviction for a violent crime is a penalty enhancer and is not an element of the crime of stalking, the circuit court erroneously admitted evidence of the prior conviction and submitted it to the jury for determination. In the alternative, Warbelton contends that even if a prior conviction for a violent crime is an element of Class H felony stalking, under *State v. Alexander*[3] the stipulation should not have been entered into evidence and the element should not have been submitted to the jury.

¶ 3. We conclude that a prior conviction for a violent crime under Wis. Stat. § 940.32(2m)(a) is an element of the stalking crime, rather than a penalty

---

[1] *See State v. Warbelton,* 2008 WI App 42, 308 Wis. 2d 459, 747 N.W.2d 717, affirming a judgment of the circuit court for Winnebago County, Scott C. Woldt, Judge.

[2] Unless otherwise indicated, all subsequent references to the Wisconsin Statutes are to the 2001–02 version, as amended effective February 1, 2003, by Wis. Act 109.

[3] 214 Wis. 2d 628, 571 N.W.2d 662 (1997).

enhancer. We further determine that *Alexander* is applicable only to prosecutions for driving while under the influence of an intoxicant or with a prohibited alcohol concentration.[4] Here, the circuit court did not err by admitting the stipulation into evidence and by submitting the element to the jury for its determination. Accordingly, we affirm the court of appeals.

I.

¶ 4. In April of 2004, Jeffery A. Warbelton was charged with seven criminal counts, all related to his conduct toward Linda M. Peterson, the complainant and his former wife. At issue here is Count 1: Stalking, in violation of Wis. Stat. § 940.32(2m)(a).[5] The complaint stated that Warbelton:

> [D]id intentionally engage in a course of conduct directed at . . . Linda M Peterson that causes that person to fear and that would cause a reasonable person to fear bodily injury or death to himself [sic] and where the actor knows or reasonably should know that the conduct placed the person in reasonable fear of bodily injury or death to himself [sic]. The actor has a previous conviction for a violent crime as defined in s. 939.632(1)(e)1. . . . contrary to sec. 940.32(2m)(a) . . . a Class H Felony, and upon conviction may be fined not more than Ten Thousand Dollars ($10,000), or imprisoned not more than six (6) years, or both.

The violent crime referred to in the complaint was a 1994 conviction for sexual assault of a child.

---

[4] *See* Wis. Stat. §§ 346.63(1)(a), 346.63(1)(b).

[5] In addition to stalking, the complaint also charged the following offenses: telephone harassment contrary to Wis. Stat. § 947.012(1)(a); three counts of disorderly conduct contrary to § 947.01; criminal trespass contrary to § 943.14; and criminal damage to property contrary to § 943.01(1).

¶ 5. The trial began on November 7, 2005, and lasted for three days. Shortly before the jury was convened, the court and the parties discussed Warbelton's offer to waive a jury determination of his prior conviction for a violent crime.

¶ 6. Warbelton's attorney stated that he believed "the nature of that element is more in the nature of a penalty enhancer rather than in what's typically a jury determination. We would be willing to stipulate not only to the prior acts but it's our position we would waive the jury trial on that particular issue." The judge conducted a colloquy during which Warbelton affirmed that he wanted to waive a jury determination of his prior conviction and that he made the decision of his own free will. The judge stated, "I'll accept the waiver and will not try that issue."

¶ 7. The district attorney, however, objected to the waiver. He argued that under Wis. Stat. § 972.02(1), the State must consent to a jury waiver, and "at this point in time the State's not willing to waive the right to jury trial on that issue."

¶ 8. Warbelton's attorney argued that "much like the dangerous weapon penalty enhancer and numerous other enhancers that the legislature has placed in the statute, either it's to be determined by the court after a finding of guilt of the underlying offense or . . . the defendant may stipulate to that element." The district attorney countered that "there's a difference between a stipulation to the element versus a waiver of that issue before the jury," and that according to recent United States Supreme Court cases, a fact that increases a penalty must be found unanimously by a jury.

¶ 9. The judge determined that although he could limit the evidence of the prior conviction to the pro

posed stipulation, he could not compel the State to accept a waiver of a jury trial on the element:

> [L]ooking at [Section 972.02(1)], which talks about jury trial waiver, it clearly states "with approval of the court," which I would approve of, "and consent of the State." Obviously, the State doesn't consent; and therefore, I guess we'll have the jury decide that.

¶ 10. The parties agreed that the jury would not learn the nature of or any details about Warbelton's prior conviction for sexual assault of a child. Although his judgment of conviction would be entered into evidence, it would not be published to the jury. The jury would hear only that both parties had stipulated that Warbelton had a prior conviction for a violent crime as defined under Wis. Stat. § 939.632(1)(e)1.

¶ 11. In fact, that is what occurred. After opening statements, the district attorney read the stipulation to the jury as follows:

> Exhibit No. 7 is a certified Judgment of Conviction in Winnebago County Case 95–CF-90. This document establishes that the defendant, Jeffrey Warbelton, has a previous conviction for a violent crime under Wisconsin Statutes 939.632, Sub. 1, Sub. E, (1).

Exhibit No. 7 was never published to the jury. The jury then heard nearly two days of testimony regarding the alleged acts of stalking, as well as the other charges—telephone harassment, disorderly conduct, criminal trespass, and criminal damage to property.[6]

---

[6] This case was consolidated with two other criminal cases against Warbelton, alleging three counts of bail jumping and two violations of a domestic abuse order. Ultimately, the jury returned not guilty verdicts on these five charges. They are not at issue in this review.

¶ 12. Warbelton took the stand and testified about his recollection of the incidents that formed the basis for the criminal complaint. During direct examination, he admitted that he had been convicted of five crimes.

¶ 13. The parties' stipulation was not mentioned again until the end of trial, when the judge reread the stipulation and gave the jury instructions. The judge instructed the jury on the elements of Class H felony stalking as follows:

> If you are satisfied beyond a reasonable doubt that all four elements of [stalking] have been proved, you should find the defendant guilty. If you are not so satisfied, you must find the defendant not guilty. If you find the defendant guilty, you must answer the following question: Did the defendant have a previous conviction for a violent crime as defined in Section 939.632, Paren. 1 Paren. E (1), Wisconsin Statutes. Before you may answer yes, you must be satisfied beyond a reasonable doubt that the answer to the question is yes. If you are not so satisfied, you must answer the question no.

Further, the judge stated, "The district attorney and the attorney for the defendant have stipulated, or agreed, to the existence of certain facts, and you must accept these facts as conclusively proved[.]"[7]

---

[7] In its argument to this court, the State asserted that the circuit court gave a limiting instruction in order to minimize the possible prejudicial effect of the stipulation. A review of the evidence shows that the following limiting instruction was read to the jury:

> Evidence has been received that the defendant, Jeffrey A. Warbelton, has been convicted of crimes. This evidence was received solely because it bears upon the credibility of the defendant as a witness. It must not be used for any other purpose, and particu-

¶ 14. The jury returned guilty verdicts on the stalking charge, the telephone harassment charge, the criminal damage to property charge, and the three disorderly conduct charges. The jury returned a not guilty verdict on the criminal trespass charge. The judge sentenced Warbelton to three years incarceration and three years extended supervision for stalking. He further sentenced Warbelton to two years incarceration on each of the remaining five counts, to run concurrently with each other and consecutively to the sentence for stalking.

¶ 15. Warbelton filed a motion for postconviction relief, asking the court to vacate all six convictions. He argued that the court erred by admitting evidence that he had a previous conviction for a violent crime, and by asking the jury to determine the fact of the prior conviction. The court denied Warbelton's motion.

¶ 16. Warbelton appealed the decision. The court of appeals concluded that Warbelton's prior criminal history was not a penalty enhancer, but rather was an element of the crime. The court further determined that it was not error for the circuit court to admit the evidence at trial or to instruct the jury to make a finding on that matter. *State v. Warbelton*, 2008 WI App 42, ¶ 1, 308 Wis. 2d 459, 747 N.W.2d 717. Warbelton petitioned for review.

---

larly, you should bear in mind that a criminal conviction at some previous point is not proof of guilt of the offense now charged.

This is a standard jury instruction given when evidence of a prior conviction is admitted to impeach the testimony of the defendant. *See* Wis JI—Criminal 327. Here, however, the stipulation was not entered into evidence solely because it bears upon the credibility of the defendant's testimony. It was admitted because the jury was required to use the evidence of a prior crime to find that Warbelton was guilty of Class H felony stalking.

¶ 17. The question of whether to admit evidence is within the circuit court's discretion. *State v. Franklin*, 2004 WI 38, ¶ 6, 270 Wis. 2d 271, 677 N.W.2d 276. This court will reverse such a decision only if the circuit court erroneously exercised its discretion. *Id.* A circuit court erroneously exercises its discretion when it bases its decision on a misstated fact or an incorrect view of the law. *State v. Delgado,* 223 Wis. 2d 270, 280, 588 N.W.2d 1 (1999).

¶ 18. In determining whether the legislature intended the conviction of the prior violent crime to be a penalty enhancer or an element of Wis. Stat. § 940.32(2m), we are presented with a question of law. *State v. Smith,* 2005 WI 104, ¶ 13, 283 Wis. 2d 57, 699 N.W.2d 508. Similarly, the determination of whether this fact should have been submitted to the jury also presents a question of law. *State v. LaCount,* 2008 WI 59, ¶ 47, 310 Wis. 2d 85, 750 N.W.2d 780. We review questions of law independently from the conclusions rendered by the circuit court and the court of appeals. *State ex rel. Hipp v. Murray*, 2008 WI 67, ¶ 20, 310 Wis. 2d 342, 750 N.W.2d 873.

III.

¶ 19. We examine first whether a prior conviction for a violent crime is a penalty enhancer, as Warbelton contends, or an element of Section 940.32(2m)(a), as advanced by the State. This distinction is important because if it is merely a penalty enhancer akin to the

habitual criminality statute,[8] the circuit court committed error by admitting evidence of Warbelton's prior crime:

> A repeater charge is relevant only to the action of the trial judge in imposing sentence after the jury has made the finding of guilt in respect to the crime tried before it. It must be withheld from the jury's knowledge.

*Mulkovich v. State,* 73 Wis. 2d 464, 468, 243 N.W.2d 198 (1976).

■■

¶ 20. Two cases from the United States Supreme Court provide helpful context to our element versus penalty enhancer inquiry. In *Apprendi v. New Jersey,* 530 U.S. 466, 477 (2000), the court reasoned that a criminal defendant is entitled to "a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Generally, a fact must be submitted to a jury and proven beyond a reasonable doubt if it increases the potential penalty for a crime beyond the penalty which could otherwise be imposed. *Id.* at 476. The due process protections guaranteed by a jury trial "extend, to some degree, to determinations that go not to a defendant's guilt or innocence, but simply to the length of his sentence." *Id.* at 484 (quotations omitted). The U.S. Supreme Court stated:

> The judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury. Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition "elements" of a separate legal offense.

*Id.* at 483 n.10.

---

[8] Wis. Stat. § 939.62(1) (2005–06).

¶ 21. The sole exception to this rule is the fact of a prior conviction. *Id.* at 487–88 (*citing Almendarez-Torres v. United States*, 523 U.S. 224 (1998)). The legislature has the authority to designate a prior conviction as a penalty enhancer rather than an element of the offense. *Almendarez-Torres*, 523 U.S. at 246. Although the legislature is permitted to designate a prior conviction as a penalty enhancer, it does not follow that the legislature is forbidden from designating a prior conviction as an element.[9] Unless otherwise designated by the legislature, a fact relevant to conviction is presumed to be an essential element of a crime.[10]

¶ 22. With these principles in mind, we turn to an analysis of the text of the statute. Determining whether a fact is an element or a penalty enhancer is an exercise in statutory interpretation. The legislature is entrusted to define the elements of a crime and to prescribe punishments for each crime. *State v. Davison*, 2003 WI 89, ¶ 31, 263 Wis. 2d 145, 666 N.W.2d 1; *see also Liparota v. United States*, 471 U.S. 419, 424 (1985).

---

[9] For another example, see Wis. Stat. § 941.29(2)(a), which criminalizes possession of a firearm for individuals previously convicted of a felony. *State v. Gibson*, 2000 WI App 207, ¶ 8, 238 Wis. 2d 547, 618 N.W.2d 248 (concluding that a prior felony conviction is an element of § 941.29(2)(a)).

[10] *See Massey v. United States*, 281 F. 293, 297 (8th Cir. 1922) ("Statutes providing for greater punishment of second or subsequent offenses by the same person have long been in force in this country . . . . It is the established rule, under such statutes, unless the statute designates a different mode of procedure, . . . the indictment or information must allege the fact of the prior conviction, and the allegation of such conviction must be proved in the trial to the jury.") (Citation omitted).

¶ 23. The 2001–02 version of Wis. Stat. § 940.32 provides in relevant part:

> (2) Whoever meets all of the following criteria is guilty of a Class I felony:
>
> (a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to fear bodily injury to or death of himself or herself or a member of his or her family or household.
>
> (b) The actor intends that at least one of the acts that constitute the course of conduct will place the specific person in reasonable fear of bodily injury to or death of himself or herself or a member of his or her family or household.
>
> (c) The actor's acts induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.
>
> . . . .
>
> (2m) Whoever violates sub. (2) is guilty of a Class H felony if any of the following applies:
>
> (a) The actor has a previous conviction for a violent crime, as defined in s. 939.632(1)(c)1.,[11] or a

---

[11] These felonies include various classifications of homicide, felony murder, battery, mayhem, sexual assault, taking hostages, kidnapping, endangering safety by use of a dangerous weapon, disarming a peace officer, arson, Molotov cocktails, several types of burglary, carjacking, robbery by use of a dangerous weapon, various classifications of sexual assault, exploitation or abuse of a child, child enticement, soliciting a child for prostitution, and abduction of a child.

previous conviction under this section or s. 947.013(1r), (1t), (1v), or (1x).[12]

(b) The actor has a previous conviction for a crime, the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior violent conviction.

(c) The actor intentionally gains access or causes another person to gain access to a record in electronic format that contains personally identifiable information regarding the victim in order to facilitate the violation.

(d) The person violates s. 968.31(1) or 968.34(1) in order to facilitate the violation.

(e) The victim is under the age of 18 years at the time of the violation.

(3) Whoever violates sub. (2) is guilty of a Class F felony if any of the following applies:

. . . .

Wis. Stat. § 940.32 (emphasis added).[13]

¶ 24. The statute creates three distinct classifications of stalking offenses. Sub. (2) defines the underlying offense of stalking, a Class I felony. Sub. (2m) enumerates five facts which elevate the offense to a Class

---

[12] These subsections define various classifications of harassment.

[13] The following facts are elements of Class F felony stalking under Wis. Stat. § 940.32(3):

(a) The act results in bodily harm to the victim or a member of the victim's family or household.

(b) The actor has a previous conviction for a violent crime, as defined in s. 939.632(1)(c)1., or a previous conviction under this section or s. 947.013(1r), (1t), (1v), or (1x), the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior conviction.

H felony. Sub. (3) enumerates three facts which elevate the offense to a Class F felony. The subsection at issue in this review is sub. (2m)(a), which elevates the crime of stalking to a Class H felony if the defendant has a prior conviction for a violent crime, a crime of stalking, or a crime involving harassment.

¶ 25. Warbelton asserts that sub. (2m)(a) is akin to a penalty enhancer much like the enhancers designated for repeat offenders under § 939.62, "Increased penalty for habitual offender."[14] He argues that stalking is always criminal behavior, regardless of whether the defendant has been previously convicted of a violent crime. He asserts that there is no reason to treat a prior conviction for a violent crime as a substantive element that must be determined by the jury.

■

¶ 26. Although there are similarities between sub. (2m)(a) and the increased penalty for habitual crimi

---

(c) The actor uses a dangerous weapon in carrying out any of the acts . . . .

[14] In relevant part, Wis. Stat. § 939.62(1) (2005–06) provides:

If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed . . . the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

(a) A maximum term of imprisonment of one year or less may be increased to not more than 2 years.

(b) A maximum term of imprisonment of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 4 years if the prior conviction was for a felony.

(c) A maximum term of imprisonment of more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 6 years if the prior conviction was for a felony.

nality statute, there are significant differences as well. An analysis of the statutory history and the text of the stalking statute reveals that the legislature intended a prior conviction for a violent crime to be a substantive element of Class H felony stalking.

¶ 27. Section 940.32 was first created by 1993 Wisconsin Act 96. Under this statute, the underlying crime of stalking was a Class A misdemeanor defined in Wis. Stat. § 940.32(2) (1993–94). The statute also provided that stalking was an aggravated Class E felony if either of the following facts was present: (a) the act resulted in bodily harm to the victim, or (b) the actor had a previous stalking conviction for a violation against the same victim within the past seven years. *Id.* § 940.32(3).

¶ 28. The statute was amended once in 1993, shortly after its creation. *See* 1993 Wis. Act 496. Among other revisions, the act created sub. (2m), which provided that anyone who commits the underlying crime of stalking is guilty of a Class D felony if he or she intentionally gains access to an electronic record containing personal information regarding the victim in order to facilitate the stalking offense. *Id.* § 940.32(2m).

¶ 29. In 2001, the legislature significantly restructured and revised the statute, adding the language that is the subject of Warbelton's appeal. *See* 2001 Wis. Act 109. Among other changes, these amendments broadened the definition of stalking[15] and revised the structure of the statute to reflect the three tiers of stalking offenses delineated above. An examination of the text reveals that the legislature designated a prior

---

[15] The amendments clarified that the course of conduct constituting stalking would create fear in a reasonable person with the same experiences as the victim.

violent conviction as an element of Class H Felony Stalking, rather than as a penalty enhancer. The following textual clues lead to this determination.

¶ 30. First, sub. (2m)(a) designates a list of specific crimes that elevate a simple stalking offense to a Class H felony. These enumerated prior convictions are for a specific set of violent crimes, prior stalking offenses, and harassment offenses. The legislature's focus on the nature of the prior crime, rather than the simple fact of a prior conviction, demonstrates that the legislature's intent was not simply to provide an enhanced punishment for habitual criminality. The selection of these specific crimes indicates that the legislature defined stalking as an aggravated crime when the perpetrator has a history of violent or obsessive behavior.

¶ 31. Second, although the habitual criminality statute provides a number of years that a judge may add to a sentence if there are prior convictions, the stalking statute specifies that defendants are guilty of a higher class of felony if they have specific prior convictions. Under sub. (2m), if any of the listed conditions are met, then the defendant is guilty of a Class H felony. § 940.32(2m). A prior conviction for a violent crime, by itself, subjects the defendant to an entirely different class of felony. This indicates that the legislature intended a prior conviction to be an element of the offense rather than a penalty enhancer.

¶ 32. Third, the stalking statute is not structured like the habitual criminality statute, which defines penalty enhancers rather than substantive elements. Instead, the stalking statute sets up three classes of stalking, with increasing punishments—Class I felonies under § 940.32(2), Class H felonies under § 940.32(2m), and Class F felonies under § 940.32(3).

270

¶ 33. Apart from sub. (2m)(a), the four subsections under sub. (2m) contain alternative facts that require proof to a jury beyond a reasonable doubt. These alternative facts are a prior conviction for any offense against the same victim within the past seven years, the use of an electronic record in order to facilitate the stalking violation, the interception and disclosure of another person's communication in order to facilitate the stalking violation, and a victim who is under the age of 18. § 940.32(2m)(b)-(e).[16]

¶ 34. Thus, it is unlikely that the legislature intended sub. (2m)(a) to define a penalty enhancer, when all of the other facts enumerated in subs. (2m) and (3) appear to be essential elements that must be proven to a jury. The structure of the statute, viewed in its entirety, indicates that a prior conviction for a violent crime is an essential element for a conviction under § 940.32(2m)(a).

¶ 35. Our analysis is confirmed by the legislative history of stalking statutes in Wisconsin and nationally. Stalking statutes were passed nationwide in the early 1990s in response to several high-profile murders of women who had previously been stalked by their killers. *See* Nat'l Inst. of Justice, U.S. Dep't of Justice, *Project to Develop a Model Anti-Stalking Code for States* 5 (1993). Wisconsin's initial enactment closely tracks

---

[16] Further, the subsections listed under § 940.32(3) contain alternative facts that must be proven to a jury before a defendant can be convicted of Class F stalking. These facts are: (a) bodily harm to the victim; (b) a prior conviction for a violent crime, a stalking crime, or harassment against the same victim of the current charge and within the past seven years; or (c) use of a weapon during the commission of the crime. § 940.32(3)(a)-(c).

much of the language of a model statute promulgated in 1993 by the National Institute of Justice.[17]

▬

¶ 36. The Institute noted, "Stalkers may be obsessive, unpredictable, and potentially violent. They often commit a series of increasingly violent acts, which may become suddenly violent, and result in the victim's injury or death." *Id.* at 49. Unlike with other crimes against life and bodily security, the mental state of the victim—as well as the mental state of the perpetrator—is an element of the crime of stalking. The Institute explained, "Stalking may involve conduct intended to be an expression of the stalker's feelings toward the victim." *Id.* at 9. "Since stalking statutes criminalize what otherwise would be legitimate behavior based upon the fact that the behavior induces fear, the level of fear induced in a stalking victim is a crucial element of the stalking offense." *Id.* at 48.

¶ 37. At the time that the model statute was promulgated, nine states permitted enhanced penalties for stalking if the defendant has previously been convicted of another felony. *Id.* at 28. The Institute recom-

---

[17] *Compare* Wis. Stat. § 940.32 (1993–94) *with* Nat'l Inst. of Justice, U.S. Dep't of Justice, *Project to Develop a Model Anti-Stalking Code for States* 43–44 (1993). The definitions are nearly identical in the Institute's model statute and the Wisconsin statute. Further, both define the underlying crime of stalking using the same elements, with minor substitutions in language. *Compare* § 940.32(2) *with* Nat'l Inst. of Justice, *supra*, at 43–44. The 1993 Wisconsin Statute included additional aggravating factors not included in the model statute. *See* Wis. Stat. § 940.32(3) (1993–94).

We note, however, that there is no direct reference to the model statute recorded in the legislative history of Wis. Stat. § 940.32.

mended that states "consider establishing a continuum of charges that could be used by law enforcement officials to intervene at various stages." *Id.* at 49.

¶ 38. The Institute explicitly discussed benefits of a graduated system of punishment:

> If stalking is not treated as a felony, a state may wish to consider incorporating a system of aggravating factors into its stalking sentencing policy so that a particular stalking incident can be elevated from a misdemeanor to a felony if those aggravating factors are present.

*Id.* Further, the Institute stated, "As an alternative to penalty enhancements, states may wish to consider creating a separate crime—for example, aggravated stalking—to deal with convicted stalkers who have committed previous felonies or stalking offenses." *Id.* at 50.

¶ 39. This is precisely what is borne out in the Wisconsin Statutes. Wisconsin's anti-stalking statute delineates three degrees of stalking depending on the presence of aggravating factors—Class I felony, Class H felony, and Class G felony.

¶ 40. Based on the above, we conclude that a prior conviction for a violent crime under Wis. Stat. § 940.32(2m)(a) is an element of the stalking crime, rather than a penalty enhancer.

## IV.

¶ 41. We determine next whether the court erred by admitting the stipulation into evidence and by submitting the element to the jury for its determination. Warbelton contends that even if a prior conviction for a violent crime is an element of Class H felony stalking, the circuit court erred by refusing to follow

*State v. Alexander,* 214 Wis. 2d 628, 571 N.W.2d 662 (1997). He asserts that the probative value of the stipulation was outweighed by the risk of unfair prejudice. As such, he argues that under *Alexander,* the stipulation should not have been admitted into evidence and the jury should not have been asked to determine whether he had a prior conviction for a violent crime.

¶ 42. In *Alexander,* the defendant was on trial for operating while intoxicated—third offense. One of the elements of this crime is at least two prior convictions, suspensions, or revocations. The parties agreed to a stipulation, which stated that the defendant had two or more prior convictions, suspensions, or revocations. *Id.* at 637. This sanitized stipulation did not inform the jury that the prior convictions, suspensions, or revocations were for drunk driving. The State refused, however, to consent to Alexander's proposed waiver of a jury trial on the element. *Id.*

¶ 43. In *Alexander,* we stated, "It is highly likely that jurors' experiences and common sense would tell them that when a defendant is charged with driving with a prohibited alcohol concentration, the prior convictions, suspensions or revocations . . . must be driving offenses and likely drunk-driving offenses." *Id.* at 648. The court concluded that evidence of the priors would lead the jury to think that because he had driven drunk at least twice before, "he was probably driving while intoxicated on the date in question." *Id.* at 649–50.

¶ 44. Due to the likelihood of unfair prejudice, we concluded that "the evidence of the defendant's prior convictions, suspensions or revocations should be excluded and the [prior conviction] element not submitted to the jury because the probative value of the

defendant's admission is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.* at 645.

¶ 45. The nature of the drunk driving offense and the social stigma attached to it are compelling factors that we took into account when rendering our decision in *Alexander.* Given these factors, "passion, prejudice[, or] public feeling . . . may [have] render[ed] impossible or unlikely an impartial trial by jury" if the jury was aware of prior convictions, suspensions, or revocations. *See Singer v. United States*, 380 U.S. 24, 37–38 (1965).[18] Under these circumstances, we concluded that it was not a matter for determination by the jury. *Alexander,* 214 Wis. 2d at 651.

¶ 46. Despite the parallels between *Alexander* and this case, we decline to extend *Alexander*'s holding to the stalking statute. *Alexander* is limited to prosecutions for driving while under the influence of an intoxicant or with a prohibited alcohol concentration. In these unique cases, the risk of unfair prejudice is extremely high, given the likelihood that jurors will

---

[18] In *Singer v. United States*, 380 U.S. 24, 37–38 (1965), the United States Supreme Court left open the possibility that in some situations, a defendant might be able to insist upon a bench trial. The court stated:

> We need not determine in this case whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial. Petitioner argues that there might arise situations where passion, prejudice[,] public feeling or some other factor may render impossible or unlikely an impartial trial by jury.

*Id.* (quotations and footnote omitted).

make prohibited inferences based on the fact of multiple prior convictions, suspensions, or revocations.

¶ 47. First, upon learning that the defendant has prior convictions, suspensions, or revocations, jurors are likely to infer that these prior offenses were also for drunk driving—precisely the same offense the defendant is charged with now. Second, upon learning that the defendant had multiple prior offenses, jurors are likely to infer that the current charge is part of a pattern of behavior—that is, that the defendant habitually drives while intoxicated. Third, given the defendant's probable habit of driving while intoxicated, jurors might conclude that even if the defendant is not guilty on the particular occasion charged, the defendant likely committed the same offense on many other occasions without being caught. Thus, the jury is likely convict, even if there is not persuasive proof that the defendant is guilty of the instant charge.

¶ 48. These likely inferences are at the heart of Wis. Stat. § 904.04,[19] the rule that prohibits a verdict based not on proof of the charged offense, but rather on the defendant's propensity to commit bad acts. In contrast, the element of the stalking statute that requires proof of a prior violent crime does not pose equivalent risks. Here, the jury is not likely to infer that because the defendant was convicted of a prior violent crime, it was a stalking offense. The prior offense could be one of a number of violent offenses. Additionally, the statute does not require multiple prior offenses, and therefore does not suggest a pattern of behavior. Finally, because the element does not imply a particular

---

[19] Wis. Stat. § 904.04(2)(a) provides in part:

Except as provided in par. (b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. . . .

habit, jurors are unlikely to return a guilty verdict despite insufficient evidence of the crime charged.

¶ 49. Having determined that *Alexander* is not applicable to this situation, we turn to Warbelton's arguments. Prior to trial, Warbelton invoked two distinct procedures used in criminal trials to deal with uncontested facts—a stipulation to an agreed fact,[20] and a partial jury waiver. A stipulation to an agreed fact is evidence, and its admissibility is governed by the statutory rules of evidence. In contrast, a waiver of one or more elements of a crime is a partial jury waiver, and it is governed by separate statutory and constitutional rules.[21]

¶ 50. We address Warbelton's arguments in turn. First, he contends that the stipulation should not have been admitted into evidence because it was unfairly prejudicial under Wis. Stat. § 904.03.[22]

¶ 51. Because a prior conviction is an element of the crime charged, evidence of the prior conviction is

---

[20] When both the defendant and the district attorney agree that a fact is proven, the parties can stipulate to the existence of that fact. The stipulation dispenses with the need for further proof of the fact and is presented to the jury. *Meyers v. State,* 193 Wis. 126, 127, 213 N.W. 645 (1927).

[21] *See State v. Villarreal,* 153 Wis. 2d 323, 330–31, 450 N.W.2d 519 (Ct. App. 1989). In such a case, the defendant receives a bench trial on one or more elements of the charged crime, and the evidence relevant to these elements is not admitted to the jury.

[22] Wis. Stat. § 904.03 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

277

certainly probative. Evidence of a prior crime can also be prejudicial. When, as here, prejudicial evidence is necessary to prove the element of a crime charged, the court must take great care to minimize the risk of unfair prejudice in all ways possible. *See State v. McAllister*, 153 Wis. 2d 523, 451 N.W.2d 764 (Ct. App. 1989); *Old Chief v. United States*, 519 U.S. 172 (1997). The State can be compelled to limit its proof of the element to a sanitized stipulation to the prior conviction. *See McAllister*, 153 Wis. 2d 523 (concluding that, in a prosecution for felon in possession of a firearm, evidence of the prior felony conviction was irrelevant when the defendant offered to stipulate to the prior felony conviction); *Old Chief*, 519 U.S. 172 (concluding that the judge abused his discretion by admitting evidence of a prior felony when the defendant offered to stipulate that he had a prior felony conviction).

¶ 52. In *McAllister*, the court of appeals addressed the felon in possession of a firearm statute, Wis. Stat. § 941.29, in which one of the elements is a prior conviction of a felony. The court reasoned that evidence offered to prove the element is always relevant. *McAllister*, 153 Wis. 2d at 529. However, the statute required proof only of the *fact* of a prior felony conviction. The *type* of felony conviction and *narrative details* regarding the felony conviction were not relevant to prove the felon in possession of a firearm charge. *Id.*

¶ 53. To this end, the court stated:

Where the defendant offers to stipulate to or admit the felony-conviction element of the crime with which he or she is charged, and the other-crimes evidence is not offered under sec. 904.04(2). Stats., to show the defendant's motive, opportunity, intent, or one of the other permissible exceptions, such evidence is irrelevant and should be excluded.

278

*Id.* When the defendant agrees to a sanitized stipulation admitting the prior conviction, there is no need for further proof relating to the nature of the conviction.

¶ 54. Here, Warbelton offered to stipulate to the *fact* that he had a prior conviction for a violent crime. The State agreed to the stipulation, and the court determined that evidence about the *nature* of the prior conviction would not be before the jury. Although Warbelton's 1995 judgment of conviction was entered into evidence, it was not published to the jury. The jury was told only that Warbelton had been convicted of a violent crime, and that the stipulation was conclusive proof. This procedure was proper under *McAllister* and *Old Chief.*

¶ 55. Having determined that admission of the stipulation was not error, we turn to Warbelton's second argument. Before trial, Warbelton asked the court to grant his request to waive a jury determination of the element. The State, however, did not consent to jury waiver of the element. Warbelton argues that the State's approval was not necessary, and that the circuit court erred by declining to grant a partial jury waiver.

¶ 56. A defendant has a constitutional right to a jury trial. This right is personal and fundamental and cannot be waived unless the defendant makes a voluntary, knowing, and intelligent waiver on the record. *State v. Livingston,* 159 Wis. 2d 561, 569–70, 464 N.W.2d 839 (1991).

¶ 57. It does not follow, however, that the defendant has the right to insist upon a bench trial. *See Singer,* 380 U.S. at 26 (concluding that there is no federal constitutional right to waive jury trial). Our court of appeals has twice concluded that, in accordance

with Wis. Stat. § 972.02(1), the court must approve and the State must consent to the defendant's request to waive a jury trial. *See State v. Burks,* 2004 WI App 14, 268 Wis. 2d 747, 674 N.W.2d 640 (determining that even when the defendant and the State agree to waiver, a judge can refuse to approve it and is not required to give reasons for doing so); *State v. Cook,* 141 Wis. 2d 42, 413 N.W.2d 647 (Ct. App. 1987) (concluding that the State is neither constitutionally nor statutorily required to consent to the defendant's jury waiver).

¶ 58. The procedure for waiving a jury trial is outlined in Wis. Stat. § 972.02(1):

> [C]riminal cases shall be tried by a jury . . . unless the defendant waives a jury in writing or by statement in open court . . . with the approval of the court and the consent of the state.

¶ 59. The rule requiring the State's consent to a full jury waiver applies to waiver of a jury trial on one element as well. *See State v. Villarreal,* 153 Wis. 2d 323, 332, 450 N.W.2d 519 (Ct. App. 1989); *see also State v. Hauk,* 2002 WI App 226, ¶ 32, 257 Wis. 2d 579, 652 N.W.2d 393 (citations and quotations omitted):

> The right to a jury trial includes the right to have a jury determine *each element* of the crime. Further, defendants retain this right no matter how overwhelming the evidence. Therefore, whether Hauk waived her right to have the jury determine all the elements of the crime or only some of them, the waiver analysis is the same.

These cases make clear that waiver of one element requires the same procedure as a full jury waiver.[23] This is the procedure described in Wis. Stat. § 972.02(1),

---

[23] *State v. Benoit,* 229 Wis. 2d 630, 600 N.W.2d 193 (Ct. App. 1999) does not contravene this doctrine. In *Benoit,* the

where the defendant, the State, and the court must all agree to the partial jury waiver.

¶ 60. In this case, the State refused to consent to partial jury waiver. Warbelton could not waive a jury trial on the element without the consent of the State. Thus, the circuit court did not err in submitting the element to the jury for its determination.

V.

¶ 61. In sum, we conclude that a prior conviction for a violent crime under Wis. Stat. § 940.32(2m)(a) is an element of the stalking crime, rather than a penalty enhancer. We further determine that *Alexander* is applicable only to prosecutions for driving while under the influence of an intoxicant or with a prohibited alcohol concentration. Here, the circuit court did not err by admitting the stipulation into evidence and by submitting the element to the jury for its determination. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

defendant's attorney stipulated to the second element of burglary —nonconsent of the owner—in order to prevent the owner from testifying. *See id.* at 634. The court instructed the jury on all elements of the crime, including nonconsent. *Id.* at 635. The court also instructed the jury that because nonconsent had been stipulated, it was considered proven. *Id.* After trial, Benoit appealed, arguing that the colloquy was insufficient to support his partial jury waiver. *Id.* at 636. The court of appeals determined that there was no jury waiver because the jury "made a complete and final determination of guilt based on the evidence presented; the court played no role as fact finder." *Id.* at 637.